IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 20, 2001

## STATE OF TENNESSEE v. ANTHONY RAY LAWSON

**Appeal from the Criminal Court for Knox County**
**No. 69448     Richard R. Baumgartner, Judge**

---

**No. E2000-01419-CCA-R3-CD**
**April 2, 2001**

---

Anthony Ray Lawson appeals his conviction of especially aggravated robbery and contests the sufficiency of the evidence. Upon review, we hold that the evidence is sufficient to sustain the conviction and therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

J. Liddle Kirk, Knoxville, Tennessee, for the Appellant, Anthony Ray Lawson.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; Randall E. Nichols, District Attorney General; Scott Green, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The defendant, Anthony Ray Lawson, was convicted of especially aggravated robbery at the conclusion of a jury trial in the Knox County Criminal Court. For his crime, Lawson is serving a 32 and one-half year sentence as a Violent Offender in the Department of Correction. He has appealed his conviction to challenge the sufficiency of the state's identification evidence tying him to the crime. We have reviewed the trial evidence, the briefs of the parties, and the applicable law. Because we see no legal deficiency in the convicting evidence, we affirm.

The evidence in the light most favorable to the state demonstrates that on May 30, 1999 the victim, William Corum, his then-girlfriend, Debra Lockhart, and Ms. Lockhart's sister, Linda Wallace, went to the Eagle's Club in downtown Knoxville. While there, they made the acquaintance of the defendant, Anthony Ray Lawson, and Lawson's then-girlfriend, Vickie Bundren.

Everyone in the group was drinking alcoholic beverages. After socializing together for a time, the group decided to go to Hughes's Tavern. At Hughes's, the group continued socializing and drinking alcohol. By all accounts, the two groups were friendly, and no dispute or argument ever arose between the victim and the defendant.

The victim bought two six-packs of beer from the bartender at Hughes's and went outside to put it into the trunk of his car. He did not notice anyone else outside in the parking lot. Unbeknownst to the victim, however, the defendant followed him outside. Just after the victim took his keys out of his pocket, the defendant grabbed him by the shoulder and spun him around. The victim saw the defendant's arm coming at him, and he moved one of his arms in a defensive posture. The defendant had a knife in his hand and cut the victim's wrist and stabbed him in the chest. The victim fell to the ground, and the defendant kicked the victim in the head multiple times. The victim became unconscious.

When the victim awoke, he discovered that his wallet had been removed from his pocket and $28 taken from it. The other contents of his wallet were strewn about the parking lot. Some change had been removed from one of his other pockets.

Shortly after following the victim outside, the defendant had come back into Hughes's Tavern and insisted to his girlfriend that they leave immediately. He grabbed her arm and pulled her out the door.

The victim suffered a cut wrist, a stab wound to the chest, a fractured orbit, a broken nose, broken dentures and broken eyeglasses. He has residual scarring, chest tightness, nerve damage, difficulty eating, and decreased range of motion. Due to limited financial means, he has been unable to replace his eyeglasses.

From a pretrial photographic lineup, the victim positively identified the defendant as his attacker. At trial, he positively identified the defendant as his attacker.

The defense trial strategy was to discredit the state's witnesses, particularly on the issue of identification. Primarily, the defense relied upon the testimony of Vickie Bundren. Ms. Bundren testified that the defendant was within her sight at all times that they were inside Hughes's Lounge. She explained that the defendant's sudden urge to leave the bar was due to a curfew. She acknowledged that she and the defendant saw the wounded victim on the ground outside as they left. She claimed that she asked some other patrons to call 911, although she and the defendant did not stay to talk with police because she had an outstanding warrant and did not want to go to jail that night. The defense also emphasized evidence that the victim had been drinking. Focusing on the lack of physical evidence linking the defendant to the crime, the defense elicited evidence that the weapon used in the offense was never recovered, that no one saw blood on the defendant's clothing, and that the police did not search the defendant's home or vehicle when he was arrested. Finally, the defense sought to discredit the state's witnesses by highlighting purported inconsistencies in their

testimony as compared with pretrial statements they had given and with countervailing defense proof relative to tangential matters.

In its role as finder of fact, the jury discredited the defendant's evidence and accepted the state's proof. The jury returned a guilty verdict to the charged offense of especially aggravated robbery. Following sentencing and post-trial proceedings, the defendant filed this appeal.

The defendant's sole appellate issue is that there is insufficient evidence to sustain his conviction. He essentially concedes that an especially aggravated robbery occurred, but he challenges the evidence identifying him as the perpetrator of the crime.

When a defendant challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). On appeal, the defendant no longer enjoys the presumption of innocence and therefore has the burden of demonstrating that the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

In the present case, the state presented positive eyewitness identification of the defendant as the perpetrator of the crime. The state also presented evidence that the defendant fled the scene after the crime occurred. The defense attempted to show that the victim's identification was suspect because he was intoxicated and saw his attacker for only a split second before he was struck. The defense also attempted to offer an innocent explanation for the defendant's hasty retreat from the location of the crime. Finally, the defense attempted to capitalize on the lack of physical evidence linking the defendant to the crime. The jury was called upon to resolve the factual differences in the evidence, and it did so adversely to the defense. Such was its province, and we are not free to reevaluate its credibility and weight-of-evidence determinations. Moreover, upon

review of the evidence in the light most favorable to the state, we are satisfied that the jury rationally found beyond reasonable doubt that the defendant was the perpetrator of the crime.

We therefore affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE